DOUGLAS and WALKER. J J., dissenting. *Page 136 
This case was before us at last term, S. v.Marsh, 132 N.C. 1000. There were numerous exceptions, none of which were considered because a motion in arrest of judgment was made and allowed for the absence from the indictment (for rape), as sent up in the record, of the words "against her will." This objection was not taken below. It now appears by the inspection of the indictment by the judge below, and his finding of fact thereon, that those words were in fact in the indictment as found by the grand jury and upon which the prisoner was tried, and were omitted by the clerk in making up the record. This case has heretofore not been before us, and the State asks for the correction of the indictment by a certiorari to (185) insert the words omitted by the clerk, and that the case may be argued upon the record and the exceptions taken at the trial.
If this were an application to rehear a criminal cause the Court would not entertain it. S. v. Council, 129 N.C. 511, and cases there cited. A rehearing is based on an allegation that the Court committed an error of law in the previous opinion and asks the reconsideration of that opinion. It is an appeal from the Court to itself on the ground of error in its rulings of law, just as an appeal is taken from the Superior Court. Here there was no error of law. The decision at last term is correct as the record stood. This is a motion to correct the record to speak the truth and to place the true record before us for the first time, and to consider the exceptions taken, they not having been passed on.
The same point, after similar action upon an untrue record caused by the false certificate of the clerk of the lower court, has been passed upon by the Supreme Court of Florida and the motion to restore the cause to the docket allowed. Lovett v. State, 29 Fla. 384, in an able and well-considered opinion by Chief Justice Rainey. In that case a new trial had been granted on the ground that the record in a trial for murder did not show that the prisoner was personally present at the trial. Subsequently, it being made to appear to the Court that the record did show such fact, but that such paragraph had been omitted in the transcript by the clerk, the Court ordered certiorari to *Page 137 
correct the omission and restored the cause to the docket for argument upon the exceptions taken at the trial, and it was so heard upon the true record. 30 Fla. 142. The same power is vested in this Court by section 8, Article IV, of the Constitution, which gives it power to issue any remedial writ necessary for a general supervision and control of the lower courts. Instances of supervision to insure justice are Biggs, ex parte,64 N.C. 202, and S. v. Jefferson, 66 N.C. 311. (186)
In Lovett v. State, 29 Fla. 384, above cited, the Court said, pp. 404, 405, 407: "No advantage can be gained from any action of this tribunal upon an untruthful representation of that record however ignorant the convict or the counsel may be of the real status of the record, or the incorrectness of the transcript, and however free from blame the clerk may have been in the mistake characterizing his transcript and certificate. . . . The fact still remains that a false record has been brought here on behalf of the convict and the reversal has been obtained in his behalf upon it, such reversal being based solely upon its false feature; and this fact is not changed nor its result modified by the innocence of the prisoner, his counsel and the Attorney-General, but the extent of the imposition and of the mistake is only made the greater. . . . We have been misled into reversing a judgment on a false record, into acting in a cause when that cause, as it really is and only can be acted on by us, has not been before us. . . . The State is not prohibited by any principle of law known to us from arresting the reversal which has been made of her judgment upon such false representation. She is entitled to require the party seeking relief from such judgment to bring to the appellate court the record of the cause in which it was obtained, for without this that cause is not before the appellate tribunal for consideration. Any other doctrine than this must result in the frequent consummation of fraud upon the courts and its constant encouragement"; and at page 395 the Chief Justice says that when the judgment has been granted "upon a false suggestion or under a mistake as to the facts the Court will afford relief after adjournment of the term, and if necessary recall the remittitur and stay proceedings in the court below."
Mistakes of this Court or of its clerk, not mistakes of law but of fact, have often been corrected after the mandate has gone down, and even at subsequent terms. Scott v. Queen, (187)95 N.C. 340; Cook v. Moore, 100 N.C. 294; 6 Am. St., 587; Summerlin v. Cowles, 107 N.C. 459; Scroggs v. Stevenson,108 N.C. 260; Barnhardt v. Brown, 118 N.C. 710; 36 L.R.A., 402. For as strong a reason this Court can order a correction *Page 138 
of a record below, when by reason of the false or erroneous certificate of the clerk the record, as it was, has never been before us. This is not new practice. "Upon a judgment of the King's Bench, if there be error in theprocess or through defaults of the clerks, it may be reversed in the same court, for error in fact is not error of the judges, and reversing it is not reversing their own judgment." 2 Tidd's Prac., 1137. Also Ins. Co. v.McCormick, 20 Wis., at a p. 284, where it is said that "the errors are not errors in the judgment itself. The Court in rendering judgment never passed upon them."
In this case the Court, through error for which the appellant is responsible (for it was his duty to bring up a true record), has taken action on a bill of indictment on which the prisoner was not tried, and on nothing whatever that took place at that trial. We are not asked to reverse our judgment but to correct an error of fact. The prisoner brought up the record. He presented us, as an alleged error, a statement of a matter which was false. The record he presented stated that the indictment on which he was tried omitted the words "against her will." He relied upon that omission and asked an arrest of judgment on that account. We allowed itsolely on that account. He has no ground to ask to benefit by that untrue statement in the record he presented to us, and it is immaterial that it does not appear how the omission came to be made. The case has never been before us.
In civil cases counsel on both sides have opportunity to scan the whole record carefully, and if there is omission or other error ordinarily a certiorari can and should be applied for (188) before the cause is called for argument. But in criminal actions the rotating solicitor has no opportunity to see the record proper nor any part of the transcript except "the case on appeal" served on him, and does not see even that after the clerk copies the case "as settled." When as here there was no point made below on the bill of indictment, the indictment made no part even of the "case on appeal" served on the solicitor. There is no provision of law nor any practice requiring solicitors to go back to the county seats, nor to have full transcripts of the record sent them before coming up to this Court. The Attorney-General is bound to rely upon the correctness of the record laid before him. He was not at the trial below. If, therefore, a clerk can omit material parts of the indictment and the defendant, notwithstanding the duty is on him to bring up a true record, can profit by this error of fact (whether intentional or unintentional could rarely if ever be shown), new trial will depend not upon the correct rulings of the judge below, but upon *Page 139 
the greater or less carefulness of the clerk or of the copyist, often furnished him by the appellant. It is not sufficient to say that the appellant can be again put on trial. There is the expense to the public of another trial, and witnesses may have moved away or died. The State is entitled, in the interest of justice, to have the cause presented here on the record as the matter was presented below, and it is the duty of the appellant to bring up such true record. When there is a fatal mis-statement of fact therein appellants must understand that their negligence in presenting a false record (to put it in the mildest form) cannot avail them any more than if they had made the omission fraudulently, which can never be shown. In S. v. Daniel, 121 N.C. 575, the Court said that the defendant "was derelict in not sending up a proper transcript, and the Court would not permit him a continuance of the cause for his own neglect, but would send downex mero motu an instanter certiorari to cure (189) the defect in the transcript." If the Court will not allow an appellant a continuance, even for omissions or error in the record, it will certainly not permit him to enjoy a new trial by reason of such default by him.
In England a defendant in criminal cases is allowed no appeal. We allow an appeal, but the burden is on the appellant to assign his errors and bring up a true record. When he fails to do either he cannot take profit from his omission of duty.
The judge below having from inspection of the record found that the indictment on which the appellant was tried in fact contains the words "against her will," and that being already certified to this Court, the record here can be amended to include them, as upon certiorari, and the cause will be restored to the docket to be heard in its order upon the exceptions taken below when the district to which it belongs is called, unless for cause shown it is placed at the end of the district or at the end of the docket for this term.
It does not appear that the words were omitted by the fraud of the appellant or of any one for him. If it did the appeal should properly be dismissed. The motion to restore the cause to the docket is allowed.
Motion allowed.